**Opinion issued March 12, 2019**



In The

# Court of Appeals

### For The

# First District of Texas

———————————

## NO. 01-18-00555-CV

———————————

**BRADFORD DEAN ARMISTEAD AND STUART WADE ARMISTEAD,
Appellants**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 250th District Court
Travis County,[1] Texas
Trial Court Case No. D-1-GN-17-005378**

---

[1]     Pursuant to the Texas Supreme Court's docket equalization powers, this appeal was transferred from the Third Court of Appeals to this court on June 26, 2018. *See* TEX. GOV'T CODE § 73.001; Order Regarding Transfer of Cases from Courts of Appeals, Misc. Docket No. 18-9083 (Tex. June 19, 2018). We are unaware of any conflict between the precedent of the Third Court of Appeals and that of this court on any relevant issue. *See* TEX. R. APP. P. 41.3.

# MEMORANDUM OPINION

The Texas Department of Licensing and Regulation issued final orders against Bradford Armistead and Stuart Armistead based on findings that they performed residential electrical and air-conditioning contract work without the required state licenses. The Armisteads did not seek further administrative review of the orders and did not pay the fines they assessed.

The State brought an action and moved for summary judgment seeking enforcement of the orders. The trial court granted the motion and entered judgment ordering that the State recover the outstanding fines, attorney's fees, and court costs from the Armisteads.

On appeal, the Armisteads, appearing pro se, contend that the trial court erred in relying on the facts alleged by the Department and that the fines assessed in the final orders are excessive. We hold that the Armisteads waived their right to judicial review of these issues and therefore affirm.

## BACKGROUND

### A. Conduct giving rise to the administrative penalties

The Armisteads contracted with two property owners to build their residences in Montgomery, Texas. The Armisteads installed the electrical wiring in the first home themselves. In the second home, the Armisteads installed only the wiring,

lights, and switches in the attic. Stuart Armistead also contracted to install an air conditioning unit at the second home.

After the owners complained to the Department about problems with their electrical systems, the Department investigated the Armisteads and discovered that they lacked the state licenses required to perform the electrical and air conditioning work.

### B.      Administrative proceedings

Based on its investigation, the Department charged the Armisteads with violating state licensing requirements and notified them of the possible penalties that could be assessed for the charged violations. *See* TEX. OCC. CODE § 51.302 (setting forth maximum amount of administrative penalty and factors to consider in deciding amount to assess).

The Armisteads challenged the Department's determinations and requested a hearing before the State Office of Administrative Hearings. At the Armisteads' request, the Office set a joint hearing in Houston for October 4, 2016. The Office sent notices of hearing that provided the date, time, and place for the hearing, detailed the allegations against the Armisteads, and identified the statutory grounds they were charged with violating. The last page of each notice contains the following warning:

3

> **Failure to Appear (Default)**
>
> **If Respondent fails to appear at the scheduled hearing, the Department will request a default judgment. If a default judgment is granted, the factual allegations in the notice could be deemed admitted, and the relief sought by the Department in this . . . Notice of Hearing may be granted by default without submission of additional proof by the Department.**

The Armisteads did not appear at the hearing.[2] As a result, the Department requested, and the trial court granted, default judgments ordering that the cases be "dismissed from the State Office of Administrative Hearings and remanded to the Department for informal disposition on a default basis." After remand to the Department, the Executive Director signed final orders based on the deemed fact findings and assessed administrative penalties in the amounts of $8,000 against Bradford and $11,500 against Stuart.

A list of frequently asked questions and responses accompanied each order. The responses to questions about how to appeal the order explain that "[t]he appeal is called a motion for rehearing," which "must be received by the General Counsel's office within 25 days from the date the order is signed." If it is not, "the order will become final, the sanction will take effect, and the fine will be due."

---

[2] In their brief, the Armisteads claim that they were unable to attend the hearing due to illness, but the record does not show whether they contacted the Office to explain that they were unable to attend the scheduled hearing or request that the hearing be reset for a later date.

4

Neither Bradford nor Stuart filed a motion for rehearing. After more than a year passed without receiving payment toward the assessed fines, the Department asked the Texas Attorney General (the State) to bring the underlying suit for enforcement in Travis County district court.

The Armisteads answered the enforcement suit with a general denial and a written request for a hearing on their disputes with the administrative fact findings supporting the final orders.

The State moved for summary judgment on its enforcement action. Its motion recited the procedural history leading to the final orders against the Armisteads. It averred that the record shows no motion for rehearing or request for judicial review of the final orders and that the fines remain unpaid. The State also requested an award of reasonable attorney's fees.

Neither of the Armisteads filed a written response to the State's motion. Bradford appeared at the oral hearing on the motion and apparently discussed a request for continuance with the trial court, but the record contains no ruling on the request. Stuart did not appear.

## DISCUSSION

On appeal, the Armisteads dispute the veracity of the findings relied on by the Department in assessing the fines against them and complain that the administrative penalties assessed against them are "excessive and wrong." Because they failed to

pursue and exhaust their appellate remedies at the administrative level, they waived their right to judicial review of the final orders that serve as the basis for the trial court's summary judgment ordering them to pay the outstanding fines, attorney's fees, and court costs.

To obtain judicial review of an administrative order, the aggrieved person first must exhaust all other possible avenues of relief at the agency level. If, as here, a person fails to timely file a motion for rehearing at the administrative level, the administrative order becomes final and is not subject to judicial review. *See* TEX. GOV'T CODE §§ 2001.144(a), 2001.146(a); *Jolly v. State*, 856 S.W.2d 859, 860–61 (Tex. App.—Austin 1993, writ denied).

The Armisteads are not entitled to judicial review in this enforcement action. When a person subject to a final order fails or refuses to comply with it, an administrative agency may secure a court judgment to compel compliance. *See* TEX. GOV'T CODE § 2001.202. A facially valid final order is not subject to collateral attack in a judicial enforcement proceeding.[3] *Jolly*, 856 S.W.2d at 861; *see Alamo Express, Inc. v. Union City Transfer*, 309 S.W.2d 815, 827–28 (Tex. 1958).

The Armisteads do not dispute the facial validity of the final administrative orders; instead, they attempt to challenge the findings supporting the fines assessed

---

[3] The final orders recite facts demonstrating that the Armisteads had notice of and an opportunity to respond to the charges against them.

against them. But they waived their opportunity to make that challenge by failing to timely move for rehearing, exhaust all remaining administrative avenues for relief, and petition for judicial review of the final orders.

Because the Armisteads waived their right to review of the final orders, we hold that the trial court properly granted judgment in the State's favor, consistent with the final orders.

## CONCLUSION

We affirm the judgment of the trial court.


Gordon Goodman
Justice

Panel consists of Chief Justice Radack and Justices Goodman and Countiss.